# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 25-cr-1036-CJW |
| vs. | |
| | **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |
| DERRICK DEONTE MOORE, | |
| Defendant. | |

_____

## I.    INTRODUCTION

On July 22, 2025, the Grand Jury returned an Indictment charging Defendant with one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C), one count of Possession of a Firearm by a Prohibited Person violation of 18 U.S.C. Sections 922(g)(1), 922(g)(9), and 924(a)(8), and one count of Distribution of a Controlled Substance in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C).  (Doc. 3.)

The matter before me is Defendant's motion to suppress.  (Doc. 30.)  Attached to the motion is Defendant's Inventory of items to be suppressed which includes: all firearms, controlled substances, paraphernalia relating to controlled substances, and cash seized during the search.  (Doc. 30-1.)  The Government filed a timely response.  (Doc. 34.)  The Honorable C.J. Williams, Chief United States District Court Judge, referred the motion to me for a Report and Recommendation.  I held a hearing on Defendant's motion to suppress on September 30, 2025.  (Doc. 38.)

At the hearing, the following Government Exhibits 1 and 2 were admitted without objection:

1

1. Search Warrant dated March 28, 2023; and

2. Search Warrant dated March 30, 2023.

The Government called Dubuque Police Corporal Austin Weitz[1] as a witness. I found the witness credible.

At the hearing, the following Defendant's Exhibit C was admitted without objection:

C. Dubuque Police Department's Records Management System cover page for Defendant.[2]

For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II.    FINDINGS OF FACT

While an investigator with the Dubuque Drug Task Force, Corporal Weitz was involved in the investigation of Defendant. Corporal Weitz knew Defendant had the nickname "Smooth." The investigation of Defendant began in December 2022 in response to a medical incident involving an overdose. On December 26, 2022, law enforcement interviewed the overdose victim. She reported suffering four total overdoses from pills she claimed were prescription medication provided to her by her drug supplier. She identified her drug source as a male named "Smooth" and had his phone number saved in her cell phone. (Weitz Hr'g Test. at 8-9.) The overdose victim provided Smooth's phone number to law enforcement. Officers determined that the phone number provided by the overdose victim was associated with Defendant. She also told law

---

[1] Corporal Weitz has been employed by the Dubuque Police Department since 2012. For the two years prior to his March 2024 promotion to corporal in the patrol division, Corporal Weitz was assigned to the Dubuque Drug Task Force as an investigator.

[2] Defendant also filed Exhibits A and B. (Docs. 30-3 and 30-4.) Defendant's Exhibits A and B are the same as Government's Exhibits 1 and 2, presumably why Exhibits A and B were not offered at the hearing.

enforcement that the person who sold her the medication drove a blue Dodge Avenger with a bumper sticker that read "I hate heroin." (*Id.* at 10.)

Officers learned that the cell phone number obtained from the overdose victim was registered to Alexis Lyons. The Dodge Avenger was also registered to Ms. Lyons. Officers also learned that Ms. Lyons lived on Woodlawn Street in Dubuque. Through open-source social media searches, law enforcement learned that Ms. Lyons and Defendant were likely involved in a romantic relationship. (*Id.* at 11.)

In January 2023, Corporal Weitz learned that a warrant had been issued for Defendant's arrest because of a parole violation. Subsequent to the parole violation arrest warrant, Defendant also had two arrest warrants for failing to appear at court proceedings. Police records listed Defendant's address history as an apartment building on Central Avenue in Dubuque. Investigators began intermittent surveillance at the Central Avenue residence. For example, Corporal Weitz drove by the Central Avenue residence during both his morning and evening commutes to and from work. Between January 2023 and March 2023 investigators did not observe Defendant or any vehicle associated with Defendant at the Central Avenue residence. During this same time period, investigators also intermittently surveilled Ms. Lyons's Woodlawn Street residence. Similar to the Central Avenue residence, Corporal Weitz also routinely drove by the Woodlawn Street residence during his morning and evening commutes. During this surveillance, Corporal Weitz observed a black Dodge Challenger rental car regularly parked at the Woodlawn Street residence. Investigators learned that the Dodge Challenger was rented to Defendant. At this point, as opposed to earlier in the investigation when Defendant's whereabouts appeared to be unknown, Corporal Weitz surmised that Defendant was likely staying at the Woodlawn Street residence and was no longer associated with the Central Avenue residence.

On March 28, 2023, law enforcement performed a trash search at the Woodlawn Street residence. Law enforcement found shipping packages addressed to Ms. Lyons, Chick-Fil-A wrappers with the customer's name as "Smooth" and vehicle description as a black sedan, a lid from a digital scale, packages that had contained marijuana with marijuana residue, a plastic baggie with a missing corner, three empty cigarillo wrappers, and stripped-out tobacco from the cigarillos.[3]

On March 28, 2023, law enforcement obtained a search warrant for the Woodlawn Street residence. The search warrant was executed on March 30, 2023. At the time the search warrant was executed, Defendant's rental car was parked in the driveway. During the search, officers located a firearm in the residence. Additionally, officers found suspected fentanyl pills, marijuana, a digital scale, and cash. On March 30, 2023, a subsequent search warrant for the seizure of the firearm was obtained and then the firearm was seized.

### III.  DISCUSSION

#### A.  The Parties' Arguments

Defendant argues that the evidence seized from the Woodlawn Street residence must be suppressed because "the search of the residence was not supported by probable cause." (Doc. 30-2 at 4.) Further, Defendant asserts that, "[e]ven if the warrant as written was supported by probable cause, however, the fruits of the warrant must still be suppressed because the warrant affidavits contained false statements knowingly and intentionally made, or made with reckless disregard for the truth, and, if stripped of those statements and supplied with corrected information, the warrant would be unsupported by probable cause." (Id. at 4-5.)

---

[3] Corporal Weitz testified that stripped-out or hollowed-out cigarillos are indicative of marijuana use. (Weitz Hr'g Test. at 22-23.)

Defendant contends that the "nature of the crime being investigated was the distribution of fentanyl and the contraband being sought was fentanyl in the form of blue pills marked with 'M30.'" (*Id.* at 7.) Defendant maintains that within the four corners of the search warrant application, Defendant is placed at the Woodlawn Street residence twice based on law enforcement observing his rental car being parked at the residence "twice over the course of over three months" with "no additional evidence of [Defendant] being observed coming or going from the residence or even how long the car may have been parked at the residence on the two occasions it was seen there," makes "the link between [Defendant] and the place to be searched . . . extremely tenuous." (*Id.* at 7-8.) Further, Defendant argues that "more importantly however, the nexus between the contraband sought (blue fentanyl pills), and the residence is non-existent." (*Id.* at 8.) Defendant claims that marijuana, based evidence of illegal marijuana use at the residence from the trash search, "was not the contraband being sought and the illegal possession of marijuana was not the crime [Defendant] was being investigated for." (*Id.*) Defendant concludes that based on "these facts, it is clear that there was an insufficient nexus between the contraband being sought and the place to be searched and so it therefore lacked probable cause thus making the issuance of the warrant in this case to have been in violation of the Fourth Amendment." (*Id.*)

In the alternative, Defendant argues that "because the warrant affidavit materials contained significant misstatements of material fact, [Defendant] is entitled to a hearing on the matter, and the warrant should be reconstrued with the misstatements correct, resulting in suppression, because the warrant so construed is unsupported by probable cause." (*Id.*) Specifically, Defendant argues that the search warrant affidavit contained a "significant factual misrepresentation relevant to the probable cause determination," namely that the warrant affidavit stated that Defendant's "'whereabouts are unknown, and it appeared as if he was no longer associated with . . . [the] Central Avenue

5

[residence]." (*Id.* at 9) (quoting Gov. Ex. 1.) Defendant maintains that "[t]his misrepresentation was ostensibly made to suggest that [Defendant] was residing at . . . [the] Woodlawn Street [residence] to bolster the otherwise very limited evidence that a car rented to him had been parked at that residence twice over a three month period." (*Id.*) Defendant contends that "with the misstatement accurately corrected, the warrant affidavit is even more lacking in probable cause, thus fulfilling the second *Franks* prong." (*Id.*)

Defendant also argues that the seized firearm should be suppressed as fruit of the poisonous tree. (*Id.*) Specifically, Defendant argues that the "handgun was obtained by exploiting the prior illegality of the constitutionally unsound first search warrant, therefore the handgun should be suppressed as evidence in this case." (*Id.* at 10.) Finally, Defendant argues that "the *Leon* good faith exception does not apply." (*Id.*) Specifically, Defendant argues that:

> In this case, the affidavit supporting the warrant contains a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge, to-wit: the claim that [Defendant's] whereabouts were unknown, "and it appeared as if he was no longer associated with . . . [the] Central Avenue [residence]." Warrant, Ex A, p. 8, ¶8. Additionally the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable due to the limited nexus between the defendant and the residence at [Woodlwan Street] and the non-existent . . . nexus between the contraband sought (blue fentanyl pills), and the residence (as described in subpart A of this brief). For these reasons, any police officer's reliance on this search warrant was objectively unreasonable and therefore the *Leon* good faith exception does not apply.

(*Id.* at 11-12.)

The Government argues that "the first search warrant is supported by probable cause." (Doc. 34 at 6.) Specifically, the Government argues that "there is ample evidence in the four corners of the first search warrant to support Judge Bitter's decision."

6

(*Id.* at 7.)  The Government points out that the trash search provided evidence of marijuana use and drug paraphernalia.  The Government also noted that Defendant had outstanding arrest warrants.  Combined with Defendant's vehicle being observed at the Woodlawn Street residence, the Government asserts that "the totality of the circumstances supports a fair probability that defendant, marijuana, and drug paraphernalia and evidence of drug trafficking would be found in . . . [the] Woodlawn Street [residence]."  (*Id.* at 11.)  The Government also argues that the seized firearm is not "fruit of the poisonous tree" because the first warrant "is supported by probable cause," making the second search warrant also valid.  (*Id.*)  In the alternative, the Government argues that "even if the first search warrant lacked probable cause, the good-faith exception applies."  (*Id.*)  Finally, the Government argues that "Defendant has not made a substantial preliminary showing that a false statement was made [in the warrant affidavit] and [Defendant] is not entitled to a *Franks* hearing."  (*Id.* at 15.)

**B.    Relevant Law**

"The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) contain a 'particular[ ] descri[ption of] the place to be searched, and the persons or things to be seized,' and (3) be based 'upon probable cause, supported by Oath or affirmation.'"  *United States v. Skarda*, 845 F.3d 370, 375 (8th Cir. 2016) (quoting *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994), in turn quoting U.S. Const. amend. IV).  "A magistrate judge may issue a search warrant 'upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place.'"  *Skarda*, 845 F.3d at 376 (quoting *Steagald v. United States*, 451 U.S. 204, 213, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)).  "Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 230,

238 (1983)); *see also United States v. Evans*, 4 F.4th 633, 636 (8th Cir. 2021) ("Probable cause is a fair probability that . . . evidence of a crime will be found in the location to be searched") (quoting *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996))). "In assessing whether a warrant is sufficiently particular, [courts] consider the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024) (citation omitted). The particularity requirement "is one of 'practical accuracy rather than a hypertechnical one.'" *Id*. (quoting *United States v. Schave*, 55 F.4th 671, 675 (8th Cir. 2022)). "Common sense" drives the inquiry into whether probable cause exists, and the ultimate determination cannot be "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983). "'[T]his practical and common-sensical standard' is based on 'the totality of the circumstances.'" *United States v. Zamora-Garcia*, 831 F.3d 979, 983 (8th Cir. 2016) (alteration in original) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)).

It is not this Court's place to determine whether affidavits supporting search warrants are supported by probable cause. "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (citation and internal quotation marks omitted); *see also United States v. Hallam*, 407 F.3d 942, 948 (8th Cir. 2005) ("In reviewing the issuance of a warrant, a district court need not make a *de novo* inquiry into the existence of probable cause."). "The Fourth Amendment requires that the issuing 'magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Maccani*, 49 F.4th 1126, 1130 (8th Cir. 2022) (quoting *Gates*, 462 U.S. at 236); *see also United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) ("The role of a reviewing court is to ensure the magistrate issuing the warrant 'had a "substantial basis

8

for concluding that probable cause existed"'") (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016), in turn quoting *United States v. Garcia-Hernandez*, 682 F.3d 767, 771 (8th Cir. 2012))). "When the issuing magistrate relies solely on a supporting affidavit in determining probable cause, . . . 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021) (quoting *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020)). "The issuing court's probable cause determination 'should be paid great deference by reviewing courts.'" *Johnson*, 848 F.3d at 876 (quoting *United States v. Brewer*, 588 F.3d 1165, 1170 (8th Cir. 2009)).

The substantial basis standard requires that the issuing judge "make a practical and common-sense" determination, based only on the circumstances set forth in the affidavit, that the totality of the circumstances point to "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kail*, 804 F.2d 441, 444 (8th Cir. 1986) (quoting *Gates*, 462 U.S. at 238). "Not only may an issuing judge 'draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant, . . . law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant.'" *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) (quoting *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000)). "[T]here is no requirement that an affiant have first-hand knowledge of every allegation he includes in his affidavit." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011). Conclusory statements, however, "made by affiants fail to give the issuing magistrate a substantial basis for determining probable cause exists." *United States v. Summage*, 481 F.3d 1075, 1077-78 (8th Cir. 2007). "In addition to probable cause that contraband or evidence of a crime will be found, 'there must [also] be evidence of a nexus between the contraband and the place to be searched.'"

9

*United States v. Randle*, 39 F.4th 533, 536 (8th Cir. 2022) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)). This requires "'a "nexus" between the evidence to be seized and the place to be searched, considering "the nature of the crime and the reasonable, logical likelihood of finding useful evidence."'" *Schave*, 55 F.4th at 676 (quoting *United States v. Smith*, 21 F.4th 510, 515 (8th Cir. 2021), in turn quoting *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017)).

Defendant bears the burden of proving the warrant was issued without probable cause. *See Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984) ("As a general rule, the burden of proof is on the defendant who seeks to suppress evidence") (citing *United States v. Phillips*, 540 F.2d 319 (8th Cir. 1976)); *United States v. McGuire*, No. CR 13-40058, 2013 WL 5516192, at *3 (D.S.D. Oct. 1, 2013) ("A movant seeking to suppress evidence under a regularly issued warrant has the burden to show that the warrant was issued without probable cause") (quoting *United States v. Sierra–Garcia,* 760 F. Supp. 252, 262 (E.D.N.Y. 1991)), *R. & R. adopted,* 2013 WL 6449893 (D.S.D. Dec. 10, 2013). "In doubtful or marginal cases, the resolution of the Fourth Amendment question should be determined to a large extent by the preference accorded to searches based upon warrants." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982) (quoting *United States v. Christenson*, 549 F.2d 53, 55 (8th Cir. 1977)); *see also United States v. Ventresca*, 380 U.S. 102, 109 (1965) ("Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.").

## C. Analysis

### 1. Was there probable cause for the March 28, 2023 search warrant?

Defendant argues that the initial search warrant lacked probable cause because there was an insufficient nexus between the contraband being sought and the place to be

searched.  Specifically, Defendant asserts that search warrant provides little evidence to link Defendant to the Woodlawn Street residence.  Defendant also frames the contraband being sought in the search warrant as blue fentanyl pills.  (Doc. 30-2 at 7-8.)

The four corners of the search warrant application provide the following pertinent information:  (1) During the investigation of a drug overdose, law enforcement learned that the overdose victim purchased blue "M30" fentanyl pills from an individual who had been arrested on Christmas Eve 2022 and Defendant was arrested on an active arrest warrant on December 24, 2022; (2) the overdose victim also identified her drug dealer as "Smooth" and provided Smooth's phone number and police records showed that the phone number and alias "Smooth" were both associated with Defendant; (3) on January 11, 2023, a parole violation arrest warrant was issued for Defendant; (4) the phone number associated with Defendant was determined to be registered to Alexis Lyons who resided at Woodlawn Street residence; (5) on February 22, 2023, Corporal Weitz observed a black Dodge Challenger rental car parked in the driveway of the Woodlawn Street residence and the Challenger was determined to be rented to Defendant; (6) on February 27, 2023, an arrest warrant was issued for Defendant for his failure to appear in court on a misdemeanor charge; (7) on March 16, 2023, an arrest warrant was issued for Defendant for his failure to appear in court on a felony charge; (8) on March 20, 2023, Corporal Weitz observed Defendant driving the Challenger on Woodlawn Street; (9) on March 21, 2023, Corporal Weitz observed the Challenger parked in the driveway at the Woodlawn Street residence; (10) on March 28, 2023, at 3:44 a.m., law enforcement searched three trash bags from trash receptacles placed at the end of the driveway of the Woodlawn Street residence, and inside the trash bags, officers found two Chick-Fil-A wrappers listing "Smooth" and "black sedan" identified on the receipts, two marijuana packages containing marijuana residue, a plastic baggie missing a corner, three empty Dutch brand cigarillo wrappers, a large amount of stripped out tobacco fillings

11

from cigarillos, and a plastic lid belonging to a digital scale; and (11) Corporal Weitz stated that "I know through my training and experience I know Dutch brand cigarillos to be used by marijuana users to smoke marijuana. I know marijuana users to remove the tobacco fillings of the cigars prior to re-using the cigar wrapper to roll marijuana into a blunt, which can then be smoked. I also know drug dealers to typically use plastic sandwich bags to re-package narcotics in preparation of sales. The drug dealer will remove a small portion of the bulk narcotic and place it in the corner of a plastic sandwich bag. The smaller amount for distribution is then secured within the corner by the bag being tied in a knot above the narcotic and cut from the rest of the sandwich bag, leaving a sandwich bag missing the corner(s)." (Gov. Ex. 1 at 9-11.) In the search warrant affidavit, Corporal Weitz concluded "I believe that drug use and the sale of drugs is occurring at . . . [the] Woodlawn Street [residence]. . . . Also, [Defendant] is living at the residence while avoiding apprehension on his active parole violation warrant and two failure to appear warrants." (*Id.* At 11.) Attachment A, the property to be seized, listing the following:

1. The apprehension of [Defendant] . . . on his three active arrest warrants;

2. Marijuana or any derivatives, a narcotic drug;

3. Any and all controlled substances, which are possessed in violation of Chapter 124.401, State Code of Iowa; [and]

4. Any and all drug paraphernalia consisting in part of and including but not limited to: straws, mirrors, hypodermic syringes, razor blades, cotton, spoons, cutting agents, scales, and any other material associated with processing and packaging of illicit drug sales and/or use; any and all documents that may relate to illicit drug sales and trafficking; [and] any money or other proceeds that may have come from drug trafficking.

(*Id.* at 14.)

First, Defendant's framing of the contraband being sought is misplaced. While the investigation of Defendant began with and involved Defendant's alleged distribution of blue fentanyl pills to the overdose victim, the search warrant was obtained not only for controlled substances (which would include blue fentanyl pills) but also for the apprehension of Defendant on three active warrants, marijuana, and drug paraphernalia. *See id*. Moreover, as outlined in detail above, the search warrant affidavit included information regarding the three active arrest warrants for Defendant and marijuana and drug paraphernalia found in the trash search. Second, the search warrant affidavit contained ample evidence connecting Defendant to the Woodlawn Street address. The phone number associated with "Smooth," Defendant's alias, obtained from the overdose victim was registered to Alexis Lyons who resided at the Woodlawn Street residence. Defendant's rental car was observed parked at the Woodlawn Street residence on February 22, 2023 and March 21, 2023. Corporal Weitz observed Defendant driving his rental car on Woodlawn Street on March 20, 2023. The trash search on March 28, 2023 included Chick-Fil-A wrappers with the name "Smooth" and "black sedan" (Defendant's rental car was a black Dodge Challenger) on the receipts. Third, in *United States v. Thurmond*, 782 F.3d 1042 (8th Cir. 2015) and *United States v. Briscoe*, 317 F.3d 906 (8th Cir. 2003), the Eighth Circuit determined that evidence of marijuana found in a trash search alone created probable cause for a search warrant. In *Thurmond*, the trash search revealed "2 suspected marijuana roaches with green plant material inside that look[ed] and smell[ed] like marijuana, blunt material, blunt paper, 2 baggie knots, cigarillos wrappers, and a mail document from the State of Iowa Disabilities Determination Service Bureau dated 01–25–13 to Shaquandis Thurmond at the very same address." 782 F.3d at 1043 (alteration in original) (quotation omitted). The warrant affidavit also "explained that blunt material is the tobacco from a cigarillo cigar that can be removed and replaced with marijuana prior to smoking the cigar." *Id*. The Eighth Circuit concluded that:

13

the search warrant issued was supported by probable cause. In addition to Thurmond's earlier arrest for possession of a controlled substance and his juvenile history with controlled substances, officers retrieved two suspected marijuana roaches with green plant material inside that looked and smelled like marijuana (one of which field-tested positive for THC), blunt material, blunt paper, two baggie knots, and cigarillo wrapper. These facts are sufficient to lead a prudent person to believe that there was a fair probability that contraband would be found in the residence.

*Id*. at 1045 (quotation omitted). In *Briscoe*, law enforcement conducted a trash search which revealed "forty marijuana seeds and twenty-five marijuana stems that tested positive for tetrahydrocannabinol, the active component of marijuana." 317 F.3d at 907. Officers applied for and obtained a search warrant for suspected narcotics trafficking. *Id*. The Eighth Circuit determined that the search warrant application was "sufficient . . . because the marijuana seeds and stems recovered from Briscoe's garbage were independently adequate to establish probable cause." *Id*. at 907-908.

Based on the totality of the circumstances outlined above, and paying great deference to the issuing court's probable cause determination in the search warrant, I find that the issuing judge had a substantial basis for concluding that probable cause existed and that there was a fair probability that contraband or evidence of a crime would be found at the Woodlawn Street residence. *See Reed*, 921 F.3d at 757; *Johnson*, 848 F.3d at 876; *Kail*, 804 F.2d at 444. I also find that the requisite "nexus" between the evidence to be seized and the place to be searched was established in the search warrant. *See Schave*, 55 F.4th at 676. Thus, I find that there was probable cause for the initial March 28, 2023 search warrant. Additionally, because I find the initial search warrant was supported by probable cause, the second search warrant issued on March 30, 2023, for purposes of seizing the firearm was also valid, and therefore, the seized firearm was not fruit of the poisonous tree. Accordingly, I recommend that the motion to suppress be denied.

14

## 2.     Is Defendant entitled to a **Franks** *hearing regarding the search warrant?*

Defendant argues that he is entitled to a *Franks* hearing because the search warrant affidavit contained a false statement, namely "[Defendant's] whereabouts were unknown, and it appeared as if he was no longer associated with . . . [the] Central Avenue [residence]."  (Gov. Ex. 1 at 9; Doc. 30-2 at 9.)

Under *Franks v. Delaware*, 438 U.S. 154 (1978), an affidavit in support of a search warrant is presumed valid.  *Id*. at 171*; see also United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022); *United States v. Hollis*, 245 F.3d 671, 673 (8th Cir. 2001).  A defendant is entitled to a hearing under *Franks* when he or she "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause."  438 U.S. at 155-56; *see also United States v. Hansen*, 27 F.4th 634, 637 (8th Cir. 2022) ("To receive a *Franks* hearing, 'a defendant must make a substantial preliminary showing that there was an intentional or reckless' omission from a warrant affidavit that 'was necessary to the finding of probable cause.'") (Quoting *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008)).  "This substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements."  *Hansen*, 27 F.4th at 637 (quoting *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015)).  Indeed, "[a] mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing."  *United States v. Short*, 2 F.4th 1076, 1080 (8th Cir. 2021) (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).

To make a showing of reckless disregard for the truth, the defendant must show that the affiant "must have entertained serious doubts as to the truth of his statements or

had obvious reasons to doubt the accuracy of the information" he reported. *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (quoting *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015)). "Recklessness can be inferred from [an] omission 'when the material omitted would have been clearly critical to the finding of probable cause.'" *Id.* (quoting *Conant*, 799 F.3d at 1200). If the defendant fails to make "a 'strong initial showing' of deliberate falsehood or reckless disregard for the truth," a *Franks* hearing "must be denied." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (quoting *United States v. Pennington*, 287 F.3d 739, 743 (8th Cir. 2002)).

If a defendant can make the requisite preliminary showing to warrant a *Franks* hearing, then at the *Franks* hearing, the defendant must establish: "(1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit; and (2) that the affidavit's remaining contents is insufficient to establish probable cause." *Conant*, 799 F.3d at 1199 (quoting *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001)). A similar analysis is employed for omissions. "The defendant must show: (1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Conant*, 799 F.3d at 1200 (quoting *Reinholz*, 245 F.3d at 774). "[N]egligence or innocent mistake is not enough to establish a *Franks* violation." *Freeman*, 625 F.3d at 1050-51 (quoting *United States v. Butler*, 594 F.3d 955, 961(8th Cir. 2010)). Only if the defendant can meet this burden will the "search warrant . . . be voided [under *Franks*] and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Butler*, 594 F.3d at 961.

At the commencement of the September 30, 2025 hearing, I expressed my skepticism regarding whether Defendant was entitled to a *Franks* hearing. Nevertheless, I noted the possible ambiguity about the statement "whereabouts are unknown" and a

16

potential contradiction in declaring Defendant's whereabout were unknown when law enforcement suspected his presence in the Woodlawn Street residence. Regardless, the Government intended to call Corporal Weitz in any event. Thus, I permitted Defendant to make inquiry into the issue.

Ultimately, however, Defendant has not made the necessary showing entitling him to a *Franks* hearing, much less establish any intentionally false or reckless statements were included in the affidavit. Here, it is significant that Defendant does not include the sentence directly before the sentence which he argues constitutes a false statement. The entirety of paragraph 8 of the search warrant affidavit provides: "On January 11, 2023, a parole violation warrant was issued for [Defendant's] arrest. [Defendant's] whereabouts were unknown, and it appeared as if he was no longer associated with . . . [the] Central Avenue [residence]." (Gov. Ex. 1 at 9.) The first sentence indicates that on January 11, 2023, when an arrest warrant was issued for Defendant, Corporal Weitz did not know Defendant's whereabouts. This reading of the warrant affidavit was confirmed at the hearing. Corporal Weitz testified that on January 11, 2023, he had concluded that Defendant's whereabouts were unknown. (Weitz Hr'g Test. at 42.) Corporal Weitz also testified that as the investigation progressed, at the time the search warrant affidavit was composed he believed that Defendant was likely staying at the Woodlawn Street residence compared to early in the investigation when he was unsure of Defendant's whereabouts and indicated that Defendant's whereabouts were unknown. (*Id.* at 20-21.) Bearing in mind that "[t]o receive a *Franks* hearing, a defendant must make a substantial preliminary showing that there was an intentional or reckless omission from a warrant affidavit that was necessary to the finding of probable cause" and the "substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements," I find that Defendant has not made the

requisite "substantial preliminary showing" entitling him to a *Franks* hearing.[4] *Hansen*, 27 F.4th at 637 (quotations omitted); *see also Short*, 2 F.4th at 1080 ("A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing.") (Quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).

At the conclusion of the hearing, Defendant's counsel confirmed that he was satisfied that Defendant had received the *Franks* hearing that he wanted. Accordingly, I recommend that Defendant's request for a *Franks* hearing be denied because Defendant has not made the necessary showing and the issue is moot. Moreover, the evidence at the hearing did not establish that any part of the affidavit was a false or reckless statement.

### 3.    Is the Leon good faith exception applicable?

Alternatively, if the Court determines that the initial March 28, 2023 search warrant lacked probable cause, the *Leon* good faith exception should be applied in this matter.

Under the good faith exception articulated in *United States v. Leon*, even if a reviewing court determines substantial evidence to issue a warrant is absent, the court should not suppress evidence seized pursuant to the search warrant if the officers executing the search warrant acted in objectively reasonable reliance on the issuance of the warrant by a neutral magistrate or judge. 468 U.S. 897, 922 (1984); *United States v. Houston*, 665 F.3d 991, 994-95 (8th Cir. 2012). "In making this determination, we ask 'whether a reasonably well-trained officer would have known that the search was illegal despite a judge's issuance of the warrant.'" *United States v. Lopez-Zuniga*, 909

---

[4] I note that Corporal Weitz was called to testify regarding the underlying process and factual background of the search at the Woodlawn Street residence, which included discussion of Defendant's "unknown whereabouts," and this testimony while possibly related to *Franks* hearing type testimony, in this instance serves as evidence that Defendant was not entitled to a *Franks* hearing.

F.3d 906, 909 (8th Cir. 2018) (quoting *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015)).

Under the "good-faith exception," if a law enforcement officer's reliance on a warrant was objectively reasonable, the evidence seized pursuant to an invalid warrant will not be suppressed. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). *Proell* noted that *Leon* identified four scenarios where it is not objectively reasonable for the executing officer to rely on a warrant issued by a magistrate:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Id*. at 431 (citing *Leon*, 468 U.S. at 923; *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006)).

*Leon* explained that "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a judge normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." 468 U.S. at 922 (quotations omitted). Nevertheless, "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id*. at 922-23 (footnote omitted). "For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, [law enforcement's] prewarrant conduct must have been 'close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable.'" *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013) (quoting *United States v. Conner*, 127 F.3d

19

663, 667 (8th Cir. 1997)). If the prewarrant conduct is clearly illegal, however, the exception does not apply. *Cannon*, 127 F.3d at 413.

None of the four scenarios contemplated by *Leon* apply here. Indeed, as discussed in detail above in relation to the *Franks* issue, there is no evidence that the affidavit in support of the search warrant contained any false statements or that the issuing magistrate judge was misled in any way. There is no evidence that the issuing magistrate judge "wholly abandoned" his or her judicial role in issuing the search warrant. As discussed above, based on the affidavit in support of the warrant application, the issuing judge had a substantial basis and made "a practical and common-sense" determination, based on the totality of the circumstances, that "a search would uncover evidence of wrongdoing"; and therefore, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Kail*, 804 F.2d at 444; *Maccani*, 49 F.4th at 1130; *Proell*, 485 F.3d at 431. Finally, there is no allegation or evidence that the warrant is "so facially deficient" that a police officer could not reasonably presume that the warrant was valid. Thus, I find that law enforcement's conduct was close enough to the line of validity to justify law enforcement's belief that the search warrant was objectively reasonable. *See id*. Accordingly, as an alternative, I recommend that Defendant's motion to suppress be denied under the *Leon* good faith exception.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Suppress. **(Doc. 30.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the

parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

      **DONE AND ENTERED** at Cedar Rapids, Iowa, this 28th day of October, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa