# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 25-CR-1036-CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| DERRICK DEONTE MOORE, | |
| Defendant. | |

## I. INTRODUCTION

A Report and Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge recommending the Court deny defendant's motion to suppress is before the Court. (Doc. 39). Defendant filed an objection to the R&R. (Doc. 44). The government filed a response to defendant's objection. (Doc. 45). For the following reasons, defendant's objection is **overruled,** the R&R is **adopted**, and defendant's Motion to Suppress (Doc. 30) is **denied**.

## II. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's R&R, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake [ ] a de novo review of the disputed portions of a magistrate judge's [R&R]"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also*

Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's R&R when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of Judge Roberts' R&R de novo.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (cleaned up) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III. DISCUSSION

#### A. *Procedural History*

On July 22, 2025, a grand jury returned an indictment charging defendant with one count of possession with intent to distribute a controlled substance—fentanyl—in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); one count of possession of a firearm by a prohibited person in violation of Title 18, United States Code, Sections 922(g)(1), 922(g)(9), and 924(a)(8); and one count of distribution of a controlled substance—fentanyl—in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). (Doc. 3).

On September 15, 2025, defendant filed a motion to suppress, (Doc. 30), requesting suppression of "[a]ll firearms, controlled substances, paraphernalia relating to controlled substances, and cash seized during search of XXXX Woodlawn St., Dubuque, Iowa, on March 30, 2023." (Doc. 30-1). In support of his motion, defendant submitted two search warrants for the Woodlawn residence—one from March 28, 2023, (Doc. 30-3), and one from March 30, 2023, (Doc. 30-4)—along with defendant's booking sheet, (Doc. 37-1), as exhibits. On September 22, 2025, the government filed a resistance, (Doc. 34), and provided the same two search warrants as exhibits along with the warrant cover sheets, returns of service, property and evidence vouchers, and DocuSign certificates of completion. (Docs. 34-2 & 34-3). The March 28, 2023 search warrant authorized law enforcement to seize defendant's person as well as marijuana, controlled substances, and drug paraphernalia. (Docs. 30-3, at 3; 34-1, at 4). The March 30, 2023 search warrant authorized law enforcement to seize a Glock handgun, firearms accessories, and any documents related to the purchase or ownership of firearms. (Doc. 30-4, at 3; 34-2, at 4).

On September 30, 2025, Judge Roberts held a hearing on the motion. (Doc. 38). At the hearing, the government called Dubuque Police Corporal Austin Weitz. The government offered the two warrants and defendant offered his booking sheet. (*Id.*). The Court accepted all three exhibits. (*Id.*). On October 28, 2025, Judge Roberts issued his R&R, recommending the Court deny defendant's motion to suppress. (Doc. 39). Specifically, Judge Roberts found the March 28, 2023 and the March 30, 2023 search warrants were supported by probable cause, that defendant had not made the necessary showing entitling him to a *Franks* hearing, and that alternatively the *Leon* good faith exception would apply. (*Id.*). On November 11, 2025, defendant filed an objection in which he objected to all of Judge Roberts' legal conclusions. (Doc. 44). The government filed a resistance to defendant's objection. (Doc. 45).

The Court has independently reviewed the record and finds no errors in Judge Roberts' detailed and thorough findings of fact; the Court adopts Judge Roberts' factual findings in their entirety. Because defendant objects to all Judge Roberts' legal conclusions, the Court conducts a de novo analysis of the legal issues.

### B. *Probable Cause for Search Warrant*

Defendant argues, first, that "[t]he evidence seized from the residence at . . . Woodlawn Street must be suppressed. Although conducted with a warrant, the search of the residence was not supported by probable cause." (Doc. 30-2, at 4). More specifically, defendant argues that "the link between [himself] and the place to be searched is extremely tenuous . . . [and] the nexus between the contraband sought (blue fentanyl pills), and the residence is non-existent." (*Id.*, at 8). At the same time, defendant admits that he was an overnight guest at the residence searched, thereby conceding there was some link between himself and the Woodlawn Street residence. (*Id.*, at 5–6).

In response, the government argues that the search warrant contained information about an ongoing fentanyl investigation and also information about an "investigator's observations related to defendant and his whereabouts, as well as . . . several items related to the consumption and trafficking of illegal controlled substances." (Doc. 34, at 8). Thus, according to the government, "the totality of the circumstances supports a fair probability that defendant, marijuana, and drug paraphernalia and evidence of drug trafficking would be found [in the Woodlawn residence]." (*Id.*, at 11). In addition, the government pointed out, "defendant had a probation violation warrant issued on January 11, 2023; a failure to appear warrant issued February 27, 2023; and another failure to appear warrant issued on March 16, 2023[,]" emphasizing that the warrant authorized law enforcement seizing defendant's person as well. (*Id.*, at 8).

4

The Fourth Amendment ensures that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also United States v. Green*, 954 F.3d 1119, 1122 (8th Cir. 2020) ("Under the Fourth Amendment, search warrants must be supported by probable cause."). "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (internal quotation marks removed) (citing *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (per curium)); *accord United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) ("If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established.").

More specifically, to be supported by probable cause a warrant must contain "evidence of a nexus between the contraband and the place to be searched[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). In looking for a nexus, courts consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999). Conclusory statements are insufficient to demonstrate that probable cause exists. *United States v. Moore*, No. 25-cr-1036-CJW, 2025 WL 3014225, at *4 (N.D. Iowa Oct. 28, 2025) (citing *United States v. Summage*, 481 F.3d 1075, 1077–78 (8th Cir. 2007)). At the same time, "probable cause is about fair probabilities, not near certainties." *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021) (cleaned up). And, "[a]s a reviewing court, we pay 'great deference' to the probable cause determinations of the issuing judge or magistrate, and limit our inquiry to discerning whether the issuing judge had a

5

substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010).

Here, the information in the search warrant included the following: (1) a woman who suffered a fentanyl overdose told Dubuque Drug Task Force investigators that she bought fentanyl from a man nicknamed Smooth who was arrested on Christmas Eve 2022, (2) Smooth is defendant's nickname, (3) defendant's phone number in Dubuque Police Department's records matches the number the woman provided for Smooth, (4) defendant was arrested on Christmas Eve 2022, (5) defendant had a rented Dodge Challenger, (6) Corporal Weitz saw defendant driving the Dodge Challenger and saw the Dodge Challenger parked at the Woodlawn Street address twice, (7) a trash pull at the Woodlawn Street address revealed two Chick-fil-A wrappers with "Smooth" and "black sedan" written on them, two commercial marijuana packages with marijuana residue, a plastic sandwich bag missing a corner, three cigarillo wrappers, stripped out tobacco fillings from cigarillos, and a lid from a digital scale, and (8) defendant had three active arrest warrants. (Doc. 30-3, at 8–10; Doc. 34-1, at 9–11). In addition, the search warrant stated that the investigator believed "drug use and the sale of drugs is occurring at . . . Woodlawn Street, Dubuque, IA. Also [defendant] is living at the residence while avoiding apprehension[.]" (Doc. 30-3, at 10; Doc. 34-1, at 11).

The Court finds, based on the totality of the circumstances, that the March 28, 2023 warrant was supported by probable cause and a sufficient nexus. Defendant's argument to the contrary misses the mark. Although defendant was charged with crimes related to fentanyl after the execution of the search warrant, law enforcement was intending to seize much more than that, including defendant "on his three active arrest warrants" and "[m]arijuana or any derivatives." (Doc. 30-3, at 3; Doc. 34-1, at 4). The information included in the warrant application demonstrated a link between drug use, drug sales, and defendant's location based on defendant's nickname associated with drug

6

sales and the residence, defendant's vehicle associated with the residence, and trash with his nickname and vehicle written on it located at the residence. Also, the trash pull uncovered marijuana residue located in commercial marijuana packages as well as items related to other controlled substances including the plastic sandwich baggie missing a corner and the lid from the digital scale. Thus, the Court finds there was a fair probability that contraband and defendant would be found at the Woodlawn Street residence, and defendant's challenge to the warrant fails.

In addition, defendant's case fits squarely within the reasoning in *United States v. Thurmond*. In that case, the Eighth Circuit Court of Appeals concluded that probable cause existed in a warrant when law enforcement found suspected marijuana roaches, blunt material, blunt paper, two baggie knots, and a cigarillo wrapper in a defendant's garbage. *United States v. Thurmond,* 782 F.3d 1042, 1045 (8th Cir. 2015). The Eighth Circuit concluded that those "facts are sufficient to lead a prudent person to believe that there was a 'fair probability' that contraband would be found in the residence." *Id*. The Eighth Circuit upheld the execution of a search warrant that then uncovered "a sawed-off shotgun, marijuana and paraphernalia, and documents associated with Thurmond." *Id*. at 1044; *see also United States v. Briscoe*, 317 F.3d 906, 909 (8th Cir. 2003 (finding that marijuana seeds and stems uncovered in a trash pull provided probable cause for a search warrant that led to the seizure of "a scale with marijuana residue, a roach clip, $1835 in cash, a firearm, and ammunition"); *United States v. Allebach*, 526 F.3d 385, 387 (8th Cir. 2008) ("[A] reasonable magistrate would conclude the materials found in the trash—two plastic bags with cocaine residue, two corners torn from plastic bags, Brillo pads, a film canister with white residue—were sufficient to establish probable cause that cocaine was being possessed and consumed in Allebach's residence."). Thus, the Court also finds that binding caselaw supports the conclusion that the search warrant here

7

was supported by probable cause and a sufficient nexus to defendant and that the items seized following its execution must not be suppressed.

Because defendant's challenge to the March 30, 2023 warrant is based entirely on his challenge to the March 28, 2023 warrant, the Court finds that challenge fails as well. *See* (Doc. 30-2, at 10; Doc. 34, at 11). The Court overrules defendant's objection on this first issue.

### C. Franks *Hearing*

Second, defendant "requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978)" because, according to defendant, "the warrant affidavit contained a significant factual misrepresentation relevant to the probable cause determination." (Doc. 30-2, at 5, 9). The government responds that "[t]he detailed information presented in the affidavit did not contain a false statement[.]" (Doc. 34, at 14).

At the outset, the Court finds this issue likely moot as defendant cross-examined Corporal Weitz at the suppression hearing and defendant conceded that, following his cross-examination, he received the *Franks* hearing that he requested. (Doc. 52, at 46); *see Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) ("When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances and a federal court can no longer grant effective relief, the case is considered moot." (cleaned up)); *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 650 (8th Cir. 2025) (explaining that an issue is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party").

Regardless, the Court also finds that defendant has failed to demonstrate that there is a false statement here that was knowingly and intentionally included in the warrant application, and, therefore, defendant has not met his required preliminary showing for a *Franks* hearing. "The requirement of a substantial preliminary showing is not lightly

8

met[.]" *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) (internal quotations omitted); *accord United States v. Hansen*, 27 F.4th 634, 637 (8th Cir. 2022).

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.
> . . .
> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 155–56, 171; *accord United States v. Kucharo*, 127 F.4th 1152, 1158 (8th Cir. 2025). "[I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72. "A showing of negligence or innocent mistake is not enough to establish a *Franks* violation. . . . [Rather], the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Butler*, 594 F.3d at 961; *see also Mathison*, 157 F.3d at 548 ("A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing.").

Defendant, without providing an offer of proof or any affidavit or sworn statement, claims that Paragraph 8 of the March 28, 2023 search warrant contains a false statement

9

that was knowingly and intentionally included. (Doc. 30-2, at 8–9). Paragraph 8 in its entirety reads: "On January 11, 2023, a parole violation warrant was issued for Moore's arrest. Moore's whereabouts were unknown, and it appeared as if he was no longer associated with . . . Central Avenue." (Doc. 30-3, at 8; 34-1, at 9). At the suppression hearing, Corporal Weitz testified that around January 2023, he did not know where defendant was residing or staying. (Doc. 52, at 14). Around that same time frame, Corporal Weitz began conducting intermittent surveillance around the Central Avenue address. (*Id.*, at 14–15). Between January and March, Corporal Weitz did not see defendant at the Central Avenue address, despite it being defendant's last known address. (*Id.*, at 15; Doc. 37-1 (defendant's booking sheet listing his addresses as both Central Avenue and Woodlawn Street)). Only later did Corporal Weitz begin observing defendant's rental vehicle at the Woodlawn Street residence. For that reason, Corporal Weitz concluded that defendant's whereabouts in January 2023 were unknown. (Doc. 52, at 21 ("earlier in the investigation the whereabouts were unknown."), 42 ("On January 11, 2023, had you concluded, personally that [defendant's] whereabouts were unknown? Yes.")).

The Court does not find that the statements in Paragraph 8 establish a deliberate falsehood, a reckless disregard for the truth, or cast doubt on the affidavit's showing of probable cause to search the residence. Rather, it seems to this Court that the statements accurately summarize Corporal Weitz's knowledge, and, as such, defendant has not met his initial burden and does not merit a *Franks* hearing. The Court also overrules defendant's objection on this second issue.

### D. Leon *Good Faith Exception*

Defendant also argues the *Leon* good faith exception does not apply. Judge Roberts made an alternative ruling in his R&R that if "the initial March 28, 2023 search

10

Case 2:25-cr-01036-CJW-MAR     Document 53     Filed 12/11/25     Page 10 of 11

warrant lacked probable cause, the *Leon* good faith exception should be applied in this matter." (Doc. 39, at 18).

Under the *Leon* good faith exception, if law enforcement officers' reliance on a warrant was objectively reasonable even if the warrant is later determined to be invalid, the evidence seized pursuant to an invalid warrant will not be suppressed. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (relying on *United States v. Leon*, 468 U.S. 897 (1984)).

The Court has already found that the warrants were supported by probable cause and therefore valid, so the Court need not address the *Leon* good faith exception. Were the Court to assume, however, the warrants were not supported by probable cause, the Court would find, like Judge Roberts, that the *Leon* good faith exception would apply, for the reasons Judge Roberts articulated in his R&R. (Doc. 39, at 18-20). Thus, the Court overrules defendant's objection on this final issue.

## IV. CONCLUSION

For these reasons, defendant's objection, (Doc. 44), is **overruled**. The Court **adopts** the R&R. (Doc. 39). Defendant's Motion to Suppress, (Doc. 30), is **denied**.

**IT IS SO ORDERED** this 11th day of December, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa